HENRY v. HENKEL, U. S. Marshal.

(District Court, S. D. New York. May 26, 1913.)

HABEAS CORPUS (§ 15*)—CONGRESSIONAL INQUIRY—PROBABLE CAUSE—REFUSAL TO TESTIFY.

 That a witness before a committee of the House of Representatives, which was acting under a resolution authorizing inquiry, as a basis for remedial legislation, into the subject of the relations of national banks in various directions, refused to give the names of officers of national banks, who, as he testified, were members of a certain syndicate, constitutes "probable cause" (the sole inquiry in habeas corpus proceedings) for the warrant for his commission to the custody of the marshal to await a warrant for his removal to the District of Columbia, where he had

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

been indicted under Rev. St. § 102 (U. S. Comp. St. 1901. p. 55), making it an offense for a witness before any committee of Congress to refuse to answer any question "pertinent to the question under inquiry"; the subject being one Congress could investigate, and the question not encroaching on the domain of inquisitorial power, and invading no constitutional rights of the witness.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 15; Dec. Dig. § 15.*]

Habeas corpus proceeding by George C. Henry against William Henkel, United States Marshal for the Southern District of New York. Writ quashed, and petitioner remanded to custody.

John C. Spooner, Paul D. Cravath, John D. Lindsay, and Stuart McNamara, all of New York City, for petitioner.

Henry A. Wise, U. S. Atty., and John E. Walker, Asst. U. S. Atty., for respondent.

MAYER, District Judge. On February 10, 1913, petitioner was indicted by the grand jury of the Supreme Court for the District of Columbia, charged with an offense under section 102 of the Revised Statutes (U. S. Comp. St. 1901, p. 55), in that on January 7, 1913, while a witness before a committee of the House of Representatives, acting under a resolution duly passed by the House, he refused to answer certain questions propounded to him on behalf of the committee, which questions were pertinent to the matter under inquiry by the said committee.

The usual proceedings for removal to the District of Columbia under section 1014 of the Revised Statutes (U. S. Comp. St. 1901, p. 716) were instituted, and the United States commissioner found probable cause, and committed the petitioner to the custody of the marshal to await a warrant of removal. Thereupon a writ of habeas corpus was issued to inquire into the legality of petitioner's detention.

In the proceedings before the commissioner, petitioner demanded an examination, and after the denial of a motion for the dismissal of the complaint the government introduced in evidence the indictment and bench warrant, and, petitioner's identity being conceded, the government rested. Petitioner then moved again for the dismissal of the complaint, and after the denial of that motion counsel for petitioner introduced in evidence a transcript of petitioner's entire testimony before the House subcommittee, and the majority and minority reports of that subcommittee. No question of fact is involved, and the sole inquiry is as to whether there existed "probable cause" to justify the issuance of the warrant.

On April 25, 1913, the House of Representatives adopted House Resolution No. 504, which is set forth at length in the indictment and need not be here repeated. That resolution authorized an inquiry into many subjects, "as a basis for remedial and other legislative purposes." One of the subjects was the relations of national banks in various directions, and in that connection inquiry was made in regard to transactions in which officers of such banks engaged, as affecting, among other things, the actions of banks in regard to loans, the listing of se-

curities on the New York Stock Exchange, the distribution of secur-- ities, and the participation in syndicates or underwritings of officers of national banks.

It is unnecessary to consider whether Congress had power ·to in- quire into certain of the subjects referred to in the resolution, for it is apparent that Congress had full authority to inquire into the mat- ters set forth in paragraph "second" of the resolution, in so far as they related to national banks.

In the course of this inquiry, the petitioner was questioned, and tes- tified at considerable length, concerning a corporation called Cali- fornia Petroleum Corporation (hereinafter referred to as California Company). The details of this inquiry are too lengthy to be recited in this memorandum, and it will suffice to state that there came a time in the course of the inquiry when petitioner was asked the names of national banks and officers of national banks who participated in the syndicate operations (described in the testimony) of the California Company. It appeared that there were four partners in this syndi- cate, and the petitioner declined to state the name of the fourth part- ner in the syndicate. From the indictment, as well as the testimony of the petitioner, it seems that he had stated that no national bank had participated in the syndicate, so that there were really but two ques- tions which he refused to answer.

Section 102 of the Revised Statutes reads as follows:

"Sec. 102. Every person who, having been summoned as a witness by the authority of either house of Congress, to give testimony or to produce papers upon any matter under inquiry before either House, or any committee of ei- ther house of Congress, wilfully makes default, or who, having appeared, re- fuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than one thousand dollars nor less than one hundred dollars, and imprisonment in a common jail for not less than one month nor more than twelve months."

It is unnecessary to consider certain questions raised as to the ex- tent to which the court may go in a proceeding of this character, for there can be no doubt that the court may examine all the evidence be- fore the commissioner, with a view to determining whether "probable cause" existed, and if, in this particular case, either of the refusals of petitioner to answer was in respect of a question "pertinent to the question under inquiry," then the technique of procedure becomes un- important.

The petitioner urges that no offense is charged, because the sub- committee was without authority, under the Constitution, upon an in- quiry purely in aid of legislation, to compel any testimony concerning the California Petroleum Syndicate, and in the interesting brief sub- mitted on his behalf many decisions are collated and discussed. I think, however, that the question under consideration is not as far- reaching as the petitioner contends.

Congress had power to ascertain whether a national bank partic- ipated directly or indirectly in the organization of California Com- pany, or the listing of its securities, or the participation in any under- writing or syndicate relating to such securities. Surely such an in- quiry would not be an exercise of the visitorial powers which Con-

gress has vested in courts of justice and in the Comptroller of the
Currency.

An examination of the National Banking Act will show that Congress has affirmatively permitted and affirmatively prohibited certain kinds of transactions, and these provisions are presumably based upon appropriate information and the result of judgment and experience. With many changes in industrial conditions and in methods of business, and with the increasing and complex problems affecting the national banking system, Congress could inform itself of the course of conduct of officers of national banks as affecting the banks, to determine whether such course should be thereafter continued, modified, or prohibited.

How far Congress could pursue its inquiry need not at this time be academically considered. We are concerned only with a particular question asked of the petitioner which he refused to answer. Certainly the committee could receive such testimony as the petitioner was willing to give. He had already testified without objection that there were 15 national bank officers who were members of the Syndicate, and also that it was customary to offer syndicate participation to national bank officers, and sometimes to national banks themselves.

In asking the petitioner the names of these national bank officers, the committee did not at that point ask a question which can be construed as encroaching upon the domain of visitorial power. The committee in that question made no inquiry as to the details of any transactions about the national banks, but solely about the officers.

Petitioner contends that, if Congress deemed this practice an evil, it already had the information needed to frame legislation in respect thereof, and that the further knowledge of the identity of the particular officers could not help. Whether the committee could have made further inquiry through such officers as to collateral loans or other affairs of the banks of which they were officers presents a question which need not be decided, because such a line of inquiry is not here to be passed upon. The sole question was the identity of these national bank officers.

The fact that the committee had already heard testimony to the effect that such officers engaged in participation did not preclude the committee from obtaining cumulative information upon that point. The committee may have considered it desirable to make this inquiry in numerous instances, with a view of ascertaining whether such participations were engaged in frequently and throughout the country, or only by the same set of officers of the same national banks, or whether such engagements were only occasional. As a result of such an inquiry, Congress may have drawn conclusions upon which to base legislation.

In point of fact, the committee did recommend that officers and directors of national banks should be prohibited from participating in syndicates or promotions or underwritings of securities in which their banks may become interested as underwriters or owners or lenders; but, even though the committee made this recommendation upon the testimony before it, it may very well have determined to cite this

(and other instances) in support of its conclusions and recommendations.

The official conduct of national bank officers is regulated by statute. A national bank springs into existence solely as a creature of statute, and while not attempting to define the extent or the limits of a congressional inquiry, it certainly cannot be said that this particular question invaded the constitutional rights of this petitioner. Whether the petitioner could have been compelled to answer the question as to who was the fourth member of the Syndicate presents a proposition quite different from that just discussed, and in that regard no opinion need now be expressed.

Finally, it seems to me that the controversy is really within a narrow compass, so far as this proceeding is concerned, and as one of the questions seems to have been pertinent, probable cause existed, and the commissioner should be sustained.

The writ will be quashed, the petitioner remanded to the custody of the marshal, and a warrant of removal will issue.